**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 20-cv-1999

**JURY DEMANDED**

CANNAPHARMARX, INC.,
a Delaware corporation,

**Plaintiff,**

v.

ARROWHEAD CONSULTING, LLC a Colorado,
limited liability company; GARY HERICK,
an individual; WHITEMOON ENERGY, LLC,
a Colorado limited liability company;
JAMIE HUTTRER, a/k/a Jamie Huttrer-Herick
an individual and ZERO RMW, LLC;
a Colorado limited liability company,

**Defendants.**

---

### VERIFIED FIRST AMENDED COMPLAINT

---

PLAINTIFF CANNAPHARMARX, INC., ("CPMD"), by and through its undersigned counsel, as and for its First Amended Complaint ("FAC") against ARROWHEAD CONSULTING, LLC ("Arrowhead"), GARY HERICK ("Herick"), WHITEMOON ENERGY, LLC ("Whitemoon"), JAMIE HUTTRER a/k/a Jamie Huttrer-Herick ("Huttrer"), and ZERO RMW, LLC, ("Zero") (collectively "the Defendants"") avers as follows.

### NATURE OF THE ACTION

1.      Plaintiff CPMD brings this claim against Defendants Herick, Arrowhead, Whitemoon, Huttrer, and Zero for breach of fiduciary duty, common law fraud, conversion, , securities violations pursuant to §10b-5 and Rule 10b-5, and §16 of the Securities Exchange Act, 1934, 15 U.S.C. § 78p(b), civil conspiracy, piercing the corporate veil, and a request for a preliminary injunction.

## PARTIES

2.   Pursuant to corporate records filed with the Secretary of State of the State of Colorado and the Securities Exchange Commission ("SEC"), Plaintiff CPMD is a foreign corporation for-profit organized under the laws of the State of Delaware with its principal place of business located at 3600 888-3rd Street, SW Calgary, Alberta, Canada T2P5C5 in the jurisdiction of the Provence of Alberta, Canada. A copy of a previous CPMD Form 10 Q filing and record from the Secretary of State of Delaware evidencing this is annexed as Exhibit A.

3.   CPMD is a publicly-traded company whose purpose is to develop cannabis grow facilities in Canada.

4.   CPMD trades on the pink sheets on the Over the Counter ("OTC") market.

5.   Plaintiff CPMD's production operations are located in the jurisdiction of Canada.

6.   Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Arrowhead is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 161 Bronco Drive, Edwards, Colorado 81632 in the State of Colorado. A copy of Arrowhead's certificate of organization and change of principal address filed with the Secretary of State of the State of Colorado is annexed as Exhibit B.

7.   Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Arrowhead is a single member limited liability company with Defendant Herick being its sole member. See Exhibit B.

8.   Defendant Herick is an individual and a citizen of the State of California residing at 271 La Brea Street, Laguna Beach, California 92651 in the State of California. See Mountain Share Transfer, LLC's stock power transfer payment authorization of January 23, 2019, evidencing Defendant Herick's address which is annexed as Exhibit C.

9.   Upon information and belief, Defendant Arrowhead is owned and controlled by Defendant Herick and is the alter ego of Defendant Herick through which he holds investments and conducts stock transactions.

10.   Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Whitemoon is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at 5290 DTC Pkwy, Suite 150,

Greenwood Village, Colorado, in the State of Colorado.  A copy of Whitemoon's periodic report filed with the Secretary of State of the State of Colorado evidencing this is annexed as Exhibit D.

11.     Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Whitemoon is a single member limited liability company with Defendant Huttrer being its sole member. A copy of Whitemoon's certificate of organization and statement curing delinquency filed with the Secretary of State of the State of Colorado evidencing this is annexed as Exhibit E.

12.     Upon information and belief, Defendant Whitemoon is owned and controlled by Defendant Huttrer and is the alter ego of Defendant Huttrer through which she holds investments and conducts stock transactions.

13.     Defendant Huttrer is the wife of Defendant Herick, is an individual and a citizen of the State of California who resides at 271 La Brea Street, Laguna Beach, California 92651 in the State of California.

14.     Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Zero is a limited liability company organized under the laws of the State of Colorado with its principal place of business located at PO Box 5035, Edwards, Colorado 81632 in the State of Colorado. A copy of Defendant Zero's certificate of organization filed with the Secretary of State of the State of Colorado evidencing this is annexed as Exhibit F.

15.     Pursuant to corporate records filed with the Secretary of State of the State of Colorado, Defendant Zero is a single member limited liability company with Defendant Herick being its sole member. See Exhibit F.

16.     Upon information and belief, Defendant Zero is owned and controlled by Defendant Herick and is the alter ego of Defendant Herick through which he holds investments and conducts stock transactions.

17.     Plaintiff is informed and believes that at all times mentioned herein, each of the Defendants was the agent, employee, and partner of each of the remaining defendants, and was acting within the scope and authority of such agency, employment and partnership and with the knowledge, consent, approval, and ratification of the remaining defendants, and each of them.

18.     Plaintiff is informed and believes that any limited liability companies affiliated with Defendants Herick and Huttrer are responsible in some manner for the occurrences and happenings

alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

19.     Plaintiff is informed and believes that any corporations affiliated with Defendants Herick and Huttrer are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

20.     Plaintiff is informed and believes that any general partnerships affiliated with Defendants Herick and Huttrer are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

21.     Plaintiff is informed and believes that any limited liability partnerships affiliated with Defendants Herick and Huttrer are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

22.     Plaintiff is informed and believes that any individuals affiliated with Defendants Herick and Huttrer are responsible in some manner for the occurrences and happenings alleged, and that Plaintiff's injuries and damages as alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

23.     Plaintiff is informed and believes that at all times mentioned herein, there has existed a unity of interest and ownership between Herick and Defendant Arrowhead and as between Herick and Defendant Zero, such that any individuality or separateness between Herick and Defendant Arrowhead and as between Herick and Defendant Zero  has ceased and Defendants Arrowhead and Zero are now mere shells and alter egos of Herick in that Herick controlled and dominated Arrowhead and Zero's business affairs and organized and operated Arrowhead and Zero as a mere extension and subsidiary of their personal business endeavors.

24.     Plaintiff is informed and believes that at all times mentioned herein, there has existed a unity of interest and ownership between Huttrer and Defendant Whitemoon, such that any individuality or separateness between Huttrer and Defendant Whitemoon has ceased and Whitemoon is now a mere shell and alter ego of Huttrer in that Huttrer controlled and dominated Whitemoon's business affairs and organized and operated Whitemoon as a mere extension and subsidiary of its personal business endeavors.

## JURISDICTION AND VENUE

25.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

26.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C §1331(a), as federal subject-matter jurisdiction exists because Plaintiff is pursuing remedies for breaches of federal securities laws pursuant to 17 C.F.R. 240, §10b-5 and Rule 10b-5 and §16 of the Securities Exchange Act, 1934, 15 U.S.C. § 78p(b).

27.     The Court has personal jurisdiction over the Defendants pursuant to Rule 4 of the Federal Rules of Procedure in circumstances where the majority of the Defendants are domiciled within the territorial jurisdiction of this Court.

28.     The Court has personal jurisdiction over this action pursuant to Rule 4 of the Federal Rules of Procedure in circumstances where the Defendants have availed themselves of the laws of the jurisdiction of this Court during the time period complained of in these proceedings.

29.     Upon information and belief, Defendants Herick and Huttrer manage and have ownership and controlling interests in Defendants Arrowhead, Zero, and Whitemoon which are all organized under the laws of the State of Colorado. *See* Exhibits B, D -F.

30.     Venue is proper under 28 U.S.C. §1391(b)(2) as all or substantially all of the incidents alleged herein giving rise to the claims asserted occurred within the territorial jurisdiction of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION
### Background

31.     Defendant Herick served as Chief Financial Officer of Plaintiff CPMD until June 2018.

32.     Defendant Herick in his capacity as Chief Financial Officer was intimately aware of all information pertaining to the proposed merger between Great Northern Cannabis and CannapharmaRx, Inc.

33.     Defendant Herick served as a member of the Board of Directors of CPMD in June 2018.

34.     Defendant Herick was re-appointed as a sole Director in Plaintiff CPMD on April 5, 2016 and served as sole director until approximately April 23, 2019.

35.     On May 29, 2019, Defendant Herick was appointed as an agent of Plaintiff CPMD.

**CPMD's Series A Financing**

36.     On April 20, 2018, Defendant Herick appointed Dominic Colvin ("Colvin") as Chief Executive Officer, President, and Director of Plaintiff CPMD.

37.     On April 20, 2018, Defendant Herick appointed Matthew Nicosia ("Nicosia") as Director of Plaintiff CPMD.

38.     On April 20, 2018, Defendant Herick appointed James Samuelson ("Samuelson") as Director of Plaintiff CPMD.

39.     Defendant Herick at this time was Chief Financial Officer and Director of CPMD.

40.     Plaintiff CPMD had not filed a 10-Q or 10-K since the 10-Q for the period ending September 30, 2015 was filed on or about November 13, 2015.

41.     Defendant Herick as Chief Financial Officer of CPMD was fully aware of this fact.

42.     Plaintiff CPMD made several 8-K filings in early 2016.

43.     By April 20, 2018, Plaintiff CPMD had been delinquent in its filings with the SEC since failing to file a 10-K for the year ending December 31, 2015.

44.     Defendant Herick as Chief Financial Officer of CPMD was fully aware of this fact.

45.     Plaintiff CPMD had no operations in the previous two years during Defendant Herick's tenure as Chief Financial Officer of CPMD.

46.     Plaintiff CPMD was in danger of being delisted by the SEC.

47.     In order to complete its delinquent filings with the SEC, Defendant Herick authorized the issuance of sixty thousand (60,000) shares of Series A Convertible Preferred Stock ("Series A Financing").

48.     The Series A Financing was the only way possible for anyone to purchase securities in a company which had been (i) dormant since late 2015/early 2016; (ii) had not filed a 10-Q or

10-K with the SEC since November, 13, 2015; and (iii) had not made any filings with the SEC since an 8-K on June 2, 2016.

49.     Plaintiff CPMD was the seller of the sixty thousand (60,000) shares of Series A Convertible Preferred Stock ("Series A Financing").

50.     Plaintiff CPMD sold its shares of Series A Convertible Preferred Stock to two individuals.

51.     The Series A Financing represented approximately eighty percent (80%) of the voting control position of Plaintiff CPMD.

52.     The primary objective of the Series A Financing was to raise funds to bring Plaintiff CPMD to become a current filer with the SEC.

**Great Northern Cannabis merger discussions**

53.     The Series A Financing was also to raise funds in order to facilitate the consummation of a merger between Plaintiff CPMD and Great Northern Cannabis (f/k/a Ravine Trading Ltd.).

54.     On April 20, 2018, Defendant Herick served as the Chief Financial Officer of Plaintiff CPMD.

55.     Defendant Herick as Chief Financial Officer of Plaintiff CPMD would be fully aware of the details and information pertaining to the proposed merger between Great Northern Cannabis and Plaintiff, CPMD.

56.     On April 20, 2018, Defendant Herick was the sole officer and director of Plaintiff CPMD.

57.     On April 20, 2018, Defendant Herick was a member of the Board of Directors of CPMD.

58.     Defendant Herick in his capacity as a director and member of the Board of Directors of CPMD had full knowledge and access to information concerning the proposed merger between Great Northern Cannabis and Plaintiff, CPMD (the "Merger").

59.     Defendant Herick was thus privy to non-public information regarding the Merger including Plaintiff, CPMD's inner workings and growth plans.

60.     There were no announcements made regarding the Merger.

61.     Given that Plaintiff had been a dormant non-reporting company for the prior years there were not any SEC filings made regarding the Merger.

62.     The Merger was formalized through an executed Letter of Intent between Great Northern Cannabis and Plaintiff, CPMD, but the transaction was not consummated.

63.     Defendant Herick took advantage of Defendant Herick's insider knowledge of this non-public information of Plaintiff, CPMD while CPMD was selling its Series A Convertible Preferred Stock during the Series A Financing.

64.      Defendant Herick used this non-public information for his own financial gain by immediately selling his own CPMD stock in private transactions with third party affiliates and individuals by trading on this material, nonpublic information.

**Agreement between Herick, Colvin, Nicosia, and Samuelson**

65.     On or about April 20, 2018, and on a number of occasions subsequently, Defendant Herick represented as fact to Colvin, Nicosia, and Samuelson that he would lock-up all of his CPMD shares ("Agreement").

66.     Defendant Herick made this representation to Colvin, Nicosia, and Samuelson prior to them taking control of CPMD.

67.     Colvin, Nicosia, and Samuelson had numerous conversations with Defendant Herick about not selling his shares.

68.     During each conversation, Defendant Herick acknowledged and confirmed that he would not sell his shares of CPMD.

69.     This was a requirement for Nicosia and Samuelson to invest in the company and for Colvin to sign the Letter of Intent for Great Northern Cannabis to merge with CPMD.

70.     Had Colvin, Nicosia and Samuelson not received assurances from Herick that he would not sell his shares, they would not have moved forward with Plaintiff, CPMD and would have sought out a different publicly traded vehicle.

71.     In fact, Colvin, Nicosia, and Samuelson only agreed to take control of CPMD and invest in the Series A financing on the condition that Defendants Herick and Arrowhead and their affiliates refrained from selling their CPMD shares.

72.     Defendant Herick subsequently breached this Agreement.

73.     Herick tried to cover up his personal stock sales which transpired after the Agreement.

**Conversion, and fraud by Herick, Arrowhead, and Zero RMW, LLC**

74.     The Convertible Note included subscription agreements and secured loans from Arrowhead Anesthesia Physicians, P.C. ("Arrowhead Anesthesia").

75.     Arrowhead Anesthesia is an entity controlled by Paul Montanarella.

76.     The secured loans owed to Plaintiff CPMD from Arrowhead Anesthesia were in the sum of one hundred fifty thousand dollars ($150,000.00).

77.     Plaintiff CPMD was the seller of the Convertible Notes and was to receive the proceeds from Arrowhead Anesthesia.

78.     Paul Montanarella is the sole director of Arrowhead Anesthesia.

79.     Arrowhead Anesthesia's secured loans were evidenced by promissory notes signed between Plaintiff CPMD and Arrowhead Anesthesia. A copy of the promissory notes is annexed as Exhibit G.

80.     Defendant Herrick physically removed several and or all of the subscription agreements and executed promissory notes from Plaintiff CPMD's office premises.

81.     Defendant Herrick since then has refused to return the subscription agreements and executed promissory notes to Plaintiff CPMD

82.     On September 14, 2018, Defendant Herrick executed the promissory notes in his capacity as an officer of Plaintiff CPMD, who was the seller. *See* Exhibit G.

83.     Defendant Herrick represented to Plaintiff CPMD that he executed the promissory notes as Chief Financial Officer of CPMD. *See* Exhibit G, pp. 6,11.

84.     On September 14, 2018, Defendant Herrick represented to Plaintiff CPMD that the promissory notes had been signed. *See* Exhibit G, p.17.

85.     In so doing, Defendant Herrick represented to Plaintiff CPMD that promissory notes were part of CPMD's Series A Financing and for the benefit of Plaintiff CPMD.

86.     Plaintiff CPMD did not receive any of the capital from Arrowhead Anesthesia.

87.     Defendant Herrick's representation was false.

88.     The monies from this corporate opportunity went to another entity known as Arrowhead Consulting, LLC, and not to Plaintiff CPMD.

89.     Defendant Arrowhead is an affiliate that is operated by Defendant Herick.

90.     Defendant Arrowhead is an entity owned and controlled by Defendant Herick.

91.     Defendants Arrowhead and Herick took the capital directly from Arrowhead Anesthesia to which Plaintiff CPMD had a lawful entitlement. Evidencing this transfer are the bank records of Defendants Herick and/or Arrowhead, annexed as Exhibit H.

92.     Plaintiff CPMD challenged Defendant Herick on his actions.

93.     Defendant Herick represented to Plaintiff CPMD that the transfers of capital to Defendant Arrowhead as reflected in Defendants Arrowhead and Herick's bank records were for personal loans made to Defendant Herick. *See* Exhibit H.

94.     Plaintiff CPMD had a legal right to the capital as is evidenced by the promissory notes with Arrowhead Anesthesia.

95.     Defendant Zero is an affiliate that is operated by Defendant Herick.

96.     Defendant Herick is the sole manager of Defendant Zero. *See* Exhibit F.

97.     Defendant Zero is an entity owned and controlled by Defendant Herick.

98.     Defendant Huttrer manages and owns the entity Defendant Whitemoon.

99.     Upon information and belief, Defendant Herick is an affiliate of Defendant Whitemoon.

100.     On April 1, 2018, Defendant Herick issued twenty thousand shares of CPMD stock as the seller to Defendant Zero at a value of one dollar ($1.00) per share. Evidencing this is a SEDI filing report filed with the Canadian authorities, annexed as Exhibit I.

101.     Defendant Herick in so doing sought to benefit himself from the transaction and not Plaintiff, CPMD as part of CPMD's Series A Financing.

102.     Upon information and belief, Defendant Zero sought to benefit Defendant Herick from the transaction and not Plaintiff, CPMD as part of CPMD's Series A Financing.

103.     Upon information and belief, Defendant Zero and Defendant Herick's acts were designed to personally benefit themselves from the transaction.

104.     Instead, Defendant Herick used the sale as an opportunity to make a secret profit by selling his own personal shares of CPMD rather than CPMD being the seller which was required in order to raise capital on behalf of and for the benefit of CPMD.

105.     As a result of Defendant Herick's actions, CPMD suffered loss and damages.

106.     Defendant Herick, as an agent of CPMD undertook to communicate and meet perspective investor third parties in order to raise capital on behalf of and for the benefit of CPMD.

107.     Defendant Herick as an officer of CPMD undertook to communicate and meet perspective investor third parties in order to raise capital on behalf of and for the benefit of CPMD.

108.     Defendant Herick as a director of CPMD undertook to communicate and meet perspective investor third parties in order to raise capital on behalf of and for the benefit of CPMD.

109.     On July 10, 2019, July 15, 2019, and July 24, 2019, Defendant Herick executed a series of Share Purchase Agreements with third party investors to sell to them two hundred sixty thousand shares (260,000) of CPMD's common stock owned by Defendant Arrowhead for consideration in the sum of one hundred thirty-five thousand dollars ($135,000). A copy of these Share Purchase Agreements is annexed as Exhibit J.

110.     On November 12, 2019, Defendants Herick/Arrowhead executed a Share Purchase Agreement with another third party investor to sell four hundred (400) shares of CPMD's common stock for which Defendants Herick/Arrowhead received consideration in the sum of one hundred twenty thousand dollars ($120,000). A copy of this Share Purchase Agreement is annexed as Exhibit K.

111.     Pursuant to clause one of each of the Share Purchase Agreements, entitled 'Purchase and Sale,' Defendant Herick represented to the purchaser that he was selling shares of common stock of CPMD as the issuer and seller. *See* Exhibits J-K, Clause 1, Purchase and Sale.

112.     Defendant Herick in fact sold his personal shares to the third-party investors in each of the Share Purchase Agreements and not those of CPMD and signed the Share Purchase Agreements in his personal capacity and not as an agent of CPMD.  *See* Exhibit J, signature pages.

113.     Defendant Herick insisted in the wiring instructions to the third-party investors that their payments for CPMD's common stock be made directly to Defendant Arrowhead and not to Plaintiff, CPMD. A copy of the wiring instructions is annexed as Exhibit L.

114.     Defendant Herick represented as fact to the third-party investors in the Share Purchase Agreements that he was selling the issued shares of common stock of CPMD, not of the entity Defendant Arrowhead.

115.    Defendant Herick's representation of November 12, 2019 was false, as the wiring instructions for all payments for CPMD's common stock were directly to Defendant Arrowhead and not Plaintiff, CPMD.

116.    Defendant Herick should have sold CPMD's stock as the seller, not his own personal stock.

117.    Upon information and belief, in so doing Defendant Herick had the funds from the sale of his own personal stock wired to him.

118.    Defendant Herick in so doing intended to defraud Plaintiff CPMD.

119.    Defendant Herick in so doing intended to cause Plaintiff CPMD to suffer consequential damage and loss.

120.    Defendant Herick committed this defraud on Plaintiff CPMD while acting in his capacity as an agent for Plaintiff CPMD.

121.    Defendant Herick perpetrated this defraud on Plaintiff CPMD while acting in his capacity as an agent of Plaintiff CPMD.

122.    Defendant Herick committed this defraud on Plaintiff CPMD while acting as a fiduciary of Plaintiff CPMD.

123.    Defendant Herick's representation(s) were fraudulently made to Plaintiff, CPMD with the intent to cause consequential pecuniary loss to CPMD who did not receive the financial benefit of the CPMD common stock from the third-party investors.

124.    Defendant Herick's actions were designed to defraud CPMD by preventing it from receiving its lawful right to the proceeds as the seller from the sale of CPMD's common stock to the third-party investors. *See* Exhibits J-K, Clause 1, Purchase and Sale and Exhibit J.

125.    Instead, Defendant Herick used it as an opportunity to make a secret profit by selling his own personal shares of CPMD rather than CPMD's which was required in order to raise capital on behalf and for the benefit of CPMD.

126.    As a result of Defendants Herick and Zero's actions, CPMD suffered loss and damages.

127.    As a result of Defendant Arrowhead's actions in accepting payments from the third-party investors for CPMD's common stock, CPMD suffered loss and damages.

128.    Plaintiff, CPMD was not able to trade its own at this juncture other than a previously announced Share Buyback Program.

**Conspiracy between Defendants Herick, Arrowhead, and Zero RMW, LLC**

129.    In transferring the capital to the entity Arrowhead, instead of depositing the funds with Plaintiff CPMD, Defendant Herick unlawfully converted the capital for his own financial gain.

130.    Defendant Arrowhead in accepting the capital deprived Plaintiff CPMD of its lawful right to the capital.

131.    Defendant Zero in accepting the shares deprived Plaintiff CPMD of its lawful, right to the capital.

132.    Defendants Arrowhead and Herick acted in concert with the intent to defraud Plaintiff CPMD.

133.    Defendants Arrowhead and Herick acted in agreement to defraud Plaintiff CPMD.

134.    Defendants Zero and Herick acted in concert with the intent to defraud Plaintiff CPMD.

135.    Defendants Zero and Herick acted in agreement to defraud Plaintiff CPMD.

136.    Defendants Arrowhead and Herick's actions usurped a corporate opportunity intended for Plaintiff CPMD.

137.    Defendants Arrowhead and Herick's actions prevented Plaintiff CPMD from acquiring the necessary capital in a timely manner in order to get its SEC filings up to date.

138.    Defendants Zero and Herick's actions usurped a corporate opportunity intended for Plaintiff CPMD.

139.    As a result, Plaintiff CPMD was deprived of capital in the sum of one hundred fifty thousand dollars ($150,000).

140.    Defendants Zero and Herick's actions prevented Plaintiff CPMD from acquiring the necessary capital in a timely manner in order to get its SEC filings up to date.

141.    This obstruction was achieved through the intentional acts of Defendants Arrowhead, Zero, and Herick.

142.    Defendant Arrowhead financially benefited from Arrowhead Anesthesia's secured loans instead of Plaintiff CPMD as was intended during the Convertible Note.

143.    Defendant Herick financially benefited from Arrowhead Anesthesia's secured loans instead of Plaintiff CPMD as was intended during the Convertible Note.

144. As a result, Plaintiff CPMD was deprived of capital in the sum of one hundred fifty thousand dollars ($150,000).

145. As a result, Plaintiff CPMD suffered economic loss and injury through alleged expenses billed by Defendant Herick to CPMD.

146. As a result of Defendant Arrowhead's actions in accepting payments from the third-party investors in the Share Purchase Agreements for CPMD's common stock, CPMD suffered loss and damages.

147. Defendants Arrowhead and Herick in this regard acted in concert with the intent to defraud Plaintiff CPMD. *See* Exhibit L.

148. Defendants Arrowhead and Herick in this regard acted in agreement to defraud Plaintiff CPMD. *See* Exhibits J-L.

149. As a result, Plaintiff CPMD suffered economic loss and injury when Defendant Herick fraudulently sold his personal stock in CPMD and borrowed from Arrowhead Anesthesia.

150. In transferring the capital to the entity Arrowhead, instead of depositing the funds with Plaintiff CPMD, Defendant Herick unlawfully converted the capital for his own financial gain.

**Fraud by Herick**

151. Defendant Herick submitted expense reports during the Convertible Note Financing.

152. Upon information and belief, Defendant Herick in these reports claimed as expenses funds which he in fact misappropriated from Plaintiff CPMD during the Convertible Note Financing.

153. Specifically, Defendant Herick's representations of what constituted expenses in his expense reports were made fraudulently.

154. Defendant Herick submitted expense reports in or about September 2018 for the years 2015, 2016, and 2017.

155. Defendant Herick claimed corporate expenses for multiple trips to Mexico City, Mexico.

156.    Upon information and belief, Defendant Herick in fact traveled to Mexico City, Mexico for business unrelated to Plaintiff CPMD.

157.    Upon information and belief, Defendant Herick did not in fact travel to Mexico City, Mexico in his corporate capacity on behalf of Plaintiff CPMD.

158.    Defendant Herick never raised any capital investment for Plaintiff CPMD during his trip to Mexico City, Mexico.

159.    Defendant's representation of corporate expenses for the trip to Mexico City, Mexico was false.

160.    On September 25, 2018, Defendant Herick claimed he was pursuing an investment opportunity in Phoenix, Arizona.

161.    Defendant Herick instead met with a group of individuals and proceeded to take them to a golf tournament in Phoenix, Arizona.

162.    Defendant Herick represented to Plaintiff CPMD that his trip to Phoenix, Arizona was made in order to raise capital for Plaintiff CPMD.

163.    Defendant Herick subsequently submitted a claim for corporate expenses to Plaintiff CPMD for his trip to Phoenix, Arizona.

164.    Defendant Herick also submitted a claim for corporate expenses to Plaintiff CPMD in excess of seven thousand dollars ($7,000) to cover the printing of materials to attend a conference in Orlando, Florida.

165.    Defendant Herick also submitted a claim for corporate expenses in the form of travel and accommodation for his trip to Phoenix, Arizona and Orlando, Florida in excess of ten thousand dollars ($10,000).

166.    Upon information and belief, Defendant Herick barely attended the Florida conference.

167.    Defendant Herick never raised any capital investment for Plaintiff CPMD during his trip to Phoenix, Arizona.

168.    Defendant Herick's representation of incurring corporate expenses of seventeen thousand dollars ($17,000) was false.

169.    Defendant Herick's false representation of incurring these corporate expenses were designed to defraud Plaintiff CPMD.

170.    As a result, Plaintiff CPMD suffered economic loss and injury by paying out fraudulently claimed expenses by Defendant Herick.

171.    As a result, Plaintiff CPMD suffered economic loss and injury where the Mexico trip did not result in the securing of capital to the benefit of Plaintiff CPMD.

172.    As a result, Plaintiff CPMD suffered economic loss and injury where the Phoenix, Arizona trip did not result in the securing of capital to the benefit of Plaintiff CPMD.

173.    As a result, Plaintiff CPMD suffered economic loss and injury where Defendant Herick fraudulently claimed expenses from Plaintiff for his own financial gain.

174.    As a result, Plaintiff CPMD suffered economic loss and injury where Defendant Herick did not act in the best interests of Plaintiff.

175.    On April 20, 2018, Defendant Herick represented to Colvin, Nicosia, and Samuelson that he would lock-up all of his CPMD shares.

176.    On April 20, 2018, Defendant Herick promised Colvin, Nicosia, and Samuelson that he would refrain from selling his CPMD shares while Plaintiff CPMD brought itself current on its filings.

177.    Colvin, Nicosia, and Samuelson relied on Defendant Herick's representations while managing Plaintiff CPMD in working toward getting Plaintiff CPMD current on its SEC public filings.

178.    On information and belief, from June to August 2018, Defendant Herick sold two hundred twenty-six thousand (226,000) shares of Plaintiff CPMD's Common Stock by utilizing material, non-public information, namely the merger with Great Northern Cannabis.

179.    Defendant Herick represented to Plaintiff CPMD that on June 28, 2018, Defendant Herick sold two hundred twenty-six thousand (226,000) shares of Plaintiff CPMD's Common Stock.

180.    By virtue of Defendant Herick's actions it caused a significant delay in Plaintiff CPMD being able to bring its SEC filings up to date.

181.    Defendant Herick's actions therefore rendered his previous representations to Colvin, Nicosia, and Samuelson as false.

182.    On information and belief, Defendant Herick did so in order to acquire a personal benefit for himself.

183.    Defendant Herick received such a benefit from trading on material non-public information.

184.    As a result, Plaintiff CPMD suffered loss and damages by relying on Defendant Herick's representation.

185.    As a result, Defendant Herick's actions caused Plaintiff CPMD to suffer loss and damages.

**Securities violations:  Insider trading by Herick**

186.    Defendant Herick represented to Plaintiff CPMD that on June 28, 2018, Defendant Herick sold two hundred twenty-six thousand (226,000) shares of Plaintiff CPMD's Common Stock.

187.    Plaintiff CPMD was the seller in respect of the two hundred twenty-six thousand (226,000) shares.

188.    Defendant Herick voted these shares at the Plaintiff CPMD's shareholder meeting held in June 2020.

189.    Defendant Herick received proceeds of seventy-five thousand nine hundred fifty dollars ($75,950) (the "Proceeds").

190.    These Proceeds were not the lawful property of Defendant Herick.

191.    Defendant Herick at this time was an officer of Plaintiff CPMD.

192.    Defendant Herick at this time had a fiduciary duty to Plaintiff CPMD.

193.    Defendant Herick, as an agent of Plaintiff CPMD, was obliged to raise money for CPMD by selling convertible notes to prospective investors in order to raise money for Plaintiff CPMD.

194.    This money raised was part of the Convertible Note Financing to ensure Plaintiff became an SEC current reporting company.

195.    Upon information and belief, Defendant Herick instead used material non-public stock in selling his own personal stock of Plaintiff CPMD for his own personal gain.

196.    Defendant Herick did not give the money raised to Plaintiff CPMD.

197.    Defendant Herick instead took the money raised for his own personal gain.

198.   At the time these shares were sold, Plaintiff CPMD had not filed with the SEC in over two years.

199.   At the time these shares were sold, Plaintiff CPMD had not made any public announcements of any plans to become a current filer with the SEC.

200.   At the time these shares were sold, Plaintiff CPMD had not made any public announcements or statements regarding any desire to acquire any interest in Great Northern Cannabis.

201.   At the time these shares were sold, Plaintiff CPMD had not signed any Letter of Intent to acquire any interest in Great Northern Cannabis.

202.   The means by which Defendant Herick would have been able to sell shares in a dormant, non-reporting shell company was to share non-public information of Plaintiff CPMD with third parties.

203.   Upon information and belief, Defendant Herick shared material non-public information of Plaintiff CPMD with third parties.

204.   Defendant Herick did so during the Convertible Note Financing in order to make a personal gain for himself.

205.   Defendant Herick received a benefit from trading that material, non-public information for a personal benefit.

206.   The vast majority of the stock sales and loan proceeds received by Defendant Herick were prior to Plaintiff CPMD receiving any funds from investors.

207.   Defendant Herick conducted these transactions under the guise of a Convertible Note Financing when in fact they were for his own personal gain.

208.   Defendant Herick acted with intent to use non-public information of Plaintiff CPMD in order to make a personal benefit, namely a financial gain for himself.

209.   On April 17 and April 18, 2019, respectively, Defendant Herick made a Form 4 filing with the SEC documenting the execution of the transactions. Copies of these Form 4 filings ("Form 4") by Defendant Herick, are annexed as Exhibit M.

210.   Defendant Herick as a Director of CPMD is an insider within Plaintiff.

211.   Defendant Herick has a legal obligation to fill out the Form 4 accurately, under penalty of perjury.

212.    Defendant Herick inserted incorrect dates for the sales of Plaintiff CPMD's common stock in the Form 4 filings.  *See* <u>Exhibit M</u>.

213.    Defendant Herick represented that he received a total of twenty-four thousand seven hundred dollars ($24,700) from an investor, Alfred Perello, in the Form 4 filings.

214.    Defendant Herick represented to Plaintiff CPMD that he sold CPMD's shares to Mr. Perello at $0.20 per share.

215.    Upon information and belief, Defendant Herick subsequently represented in the Form 4 filings that he had sold Plaintiff CPMD's shares to Mr. Perello at $0.50 per share.

216.    In January 2019, Defendant Whitemoon sold two hundred twenty thousand (202,000) shares of CPMD. The share transfer details provided by Mountain Share Transfer, LLC are annexed as Exhibit N.

217.    Defendant Herick in a subsequent Form 4 filing represented, on or about April 2019, that he continued to claim beneficial ownership of these shares.

218.    In so doing, Defendant Herick intentionally neglected in the Form 4 filing to disclose that these shares had already been sold to a third party.

219.    Defendant Herick's representation as to his beneficial ownership of these shares was false.

220.    On February 14, 2019, Plaintiff CPMD filed an amended Form 8-K with the SEC recording its belief as to the beneficial ownership of the shares of all its officers and directors.

221.    In this amended Form 8-K,  Defendant Herick claimed beneficial ownership of the shares which had in fact been sold by Defendant Whitemoon in January 2019.

222.    Upon information and belief, Defendant Herick reviewed this amended Form 8-K.

223.    Defendant Herick made no effort to correct the truth of his representation to the beneficial ownership of these shares from the Defendant Whitemoon trade.

224.    Defendant Herick therefore caused the amended Form 8-K to have been falsely made.

225.    In addition, Defendant Herick's representations in the Form 4 filing were made fraudulently.

226.    Defendant Herick claims each stock sale took place on June 28, 2018, per his Form 4 filed with the SEC.

227. Defendant Herick's and Defendant Arrowhead's bank statements demonstrate and prove that the majority of the payments for Plaintiff CPMD's shares were not received until mid to late August 2018.

228. Defendant Herick by his acts and/or omissions was attempting to hide Plaintiff CPMD's stock sales until CPMD became a fully-reporting current filer with the SEC.

229. Upon information and belief, Defendant Herick did so in order to delay the transfer of CPMD shares to the purchasers and hide the fact that Defendant Herick was selling his own personal shares.

230. Plaintiff CPMD eventually became a fully-reporting current filer with the SEC on September 14, 2018, after having been afforded more time by the SEC to become a current filer; otherwise, CPMD would have had its registration removed by the SEC.

231. Defendant Herick instructed the transfer agent, Mountain Share Transfer, LLC, to transfer said shares and those new certificates were dated Monday, September 17, 2018.

232. As a result of Defendant Herick's acts, Plaintiff CPMD has suffered loss and damages.

233. Plaintiff CPMD became current on its SEC filings despite the acts of Defendant Herick which caused significant delay in this process.

234. Plaintiff CPMD by becoming current in its filings was able to have current public information on file with the SEC.

**Securities violations: Short-Swing profits by Herick, Whitemoon, and Huttrer**

235. This is an action to recover "short swing" profits under Section 16(b) of theSecurities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b).

236. Section 16(b) is a strict liability statute. A plaintiff must prove only that the defendant was an insider of a public company (insider defined as an officer, director or beneficial owner of more than 10% of a class of equity security or that company) who profited from the purchase and sale of the company's stock or derivative securities within a period of less than six months. Evidence of the defendant's intent, misuse of information, or bad faith is irrelevant and not required. Section 16(b) is not punitive, and insiders are simply required to disgorge profits realized in violation of the Securities Exchange Act of 1934. Whether a defendant has realized a profit, and the calculation of such profit, from particular transactions under Section 16(b) is

determined in accordance with rules and regulations promulgated thereunder by the U.S. Securities Exchange Commission (the "SEC") and judicial interpretations.

237.    In this action, Plaintiff alleges that Defendant Herick, individually and/or by and through Defendant Whitemoon engaged in substantial transactions in Plaintiff, CPMD's common stock and derivative securities. The transactions in derivative securities are alleged to be equivalent, under the rules and regulations of the SEC, to the buying and selling of CPMD common stock at a significant profit. Defendants must return their profit, as it is calculated under SEC rules and regulations applicable to the transactions in question, to CPMD.

238.    When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group ("Group") formed thereby is deemed to have acquired beneficial ownership, of purposes of Sections 13(d) and 13(g) of the Securities Exchange Act of 1934, as of the date of such agreement, of all equity securities of the issuer beneficially owned by any such persons. Each member of the Group is deemed to be, in his or her individual capacity, a beneficial owner of more than 10% of a class of the issuer's equity securities.

239.    At all relevant times, Defendants acted as a Group under Section 13(d)(3) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(3), and inter alia SEC Rule 13d-5(b)(1) promulgated thereunder. Defendants acted together for the purpose of acquiring, holding or disposing of Prospect securities by, among other things, engaging in concert in the August 2018, and January 2019 transactions to be described herein.

240.    The violations of Section 16(b) described herein involve non-exempt securities in non-exempt transactions engaged in by a non-exempt individual and non-exempt entities within the meaning of the Act.

241.    At all relevant times, the common stock of CPMD was registered and was listed for trading on OTC stock market.

242.    Defendant Herick sold Plaintiff CPMD's stock in August 2018.

243.    At the time, Defendant Herick had a shareholding in excess of ten percent (10%) of Plaintiff CPMD's stock.

244.    At the time, Defendant Herick was the owner of approximately twenty-six percent (26%) of Plaintiff CPMD's common stock.

245.    Defendant Herick acquired Plaintiff CPMD's stock in January 2019.

246.     This sale was within a period of less than six (6) months between this sale and acquisition of securities by Defendant Herick.

247.     These two transactions occurred within six (6) months of each other.

248.     Defendant Herick's acts constituted a short-swing profit violation pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b).

249.     Upon information and belief, Defendant Herick inserted incorrect dates in the Form 4 filing so as to obfuscate these short-swing profit violations.

250.     Defendant Herick made a false representation in the Form 4 filing on April 17 and April 18, 2019.

251.     Defendant Herick knowingly made the false representation in the Form 4 filing in order to hide his making of a financial gain.

252.     As a result of Defendant Herick's acts, Plaintiff CPMD has suffered loss and damages.

253.     As a result of Defendant Herick's omissions, Plaintiff CPMD has suffered loss and damages.

254.     Upon information and belief, Defendant Whitemoon sold shares in January 2019.

255.     This sale occurred immediately after Defendant Herick acquired Plaintiff CPMD's stock in January 2019.

256.     Upon information and belief, Defendant Herick filed a Form 4 showing ownership of these shares.

257.     Defendant Whitemoon is owned and/or managed by Huttrer, the spouse of Defendant Herick.

258.     Upon information and belief, Defendant Whitemoon is an affiliate of Defendant Herick.

259.     By virtue of Huttrer's status as spouse of Defendant Herick, Defendant Huttrer has ownership of his assets.

260.     Upon information and belief, Defendant Whitemoon by selling its shares in January 2019 did so within a period of less than six (6) months from Defendant Herick's acquisition and sale of securities of Plaintiff CPMD.

261.     Defendant Whitemoon's acts constituted a short-swing profit violation pursuant to the Securities Exchange Act.

262.    Defendant Huttrer's acts constituted a short-swing profit violation pursuant to the Securities Exchange Act.

263.    Defendant Huttrer is vicariously liable for the acts of Defendant Whitemoon.

264.    Demand for prosecution was made on each of the Defendants by Plaintiff with respect to unlawful short-swing profits made by Defendants between August 2018 to January 2019. More than 60 days have passed since each of such demands was made, during which time the Defendants have failed and refused to act to recover profits due to it. By electronic mail message of July 9, 2020, corporate counsel of the Defendants disputed Defendants' violations of Section 16(b) of the Act to have taken place.

265.    On July 9, 2020, CPMD served a letter of demand upon each of the Defendants demanding the return to CPMD on or before September 8, 2020, of the unlawful short-swing profits made by Defendants between August 2018 to January 2019. The letters of demand are annexed as Exhibit O.

266.    No refund was made to CPMD by the Defendants of these unlawful short-swing profits accumulated by Defendant Herick on or before September 8, 2020.

267.    Further delay in filing suit would be a futile gesture.

268.    This action is brought within two years of the occurrence of the transactions giving rise to Section 16(b) liability, as described herein.

269.    As a result of Defendant's acts, Plaintiff CPMD has suffered loss and damages.

270.    Plaintiff CPMD suffered loss and damages in the amount of two hundred thousand seven hundred dollars ($219,700) arising from the Defendant's unlawful short-swing profit violations.

271.    As a result of Defendant's acts, Plaintiff CPMD continues to suffer loss and damages.

**Securities violations:  Fraudulent issuance and sale of CPMD's securities by Herick**

272.    Between June 2018 and August 2018, Defendant Herick sold two hundred twenty-six thousand (226,000) shares of Plaintiff CPMD's Common Stock by utilizing material, non-public information, namely the merger with Great Northern Cannabis.

273.    In January 2019, Defendant Whitemoon sold two hundred twenty thousand (202,000) shares of CPMD.

274.     On February 14, 2019, in an amended Form 8-K, Defendant Herick, a Director, claimed beneficial ownership of the shares which had in fact been sold by Defendant Whitemoon in January 2019.

275.     On April 17 and April 18, 2019, respectively, Defendant Herick made a Form 4 filing with the SEC documenting the execution of these transactions.

276.     Defendant Herick instructed the transfer agent, Mountain Share Transfer, LLC, to transfer the shares and issue new share certificates to be dated Monday, September 17, 2018.

277.     Defendant Herick knowingly did so in order to hide the financial gain he made in selling his own personal stock instead of Plaintiff CPMD's Common Stock.

278.     In reliance upon the documents signed and presented by Herick, Mountain Share Transfer, LLC, issued and delivered certificates for preferred A shares of CPMD's common stock to Defendant Zero which did not bear appropriate restrictive legend pursuant to Rule 144 of the 1933 Act.

279.     No special meeting of the CPMD Board of Directors was held and at no time did the CPMD Board of Directors resolve to issue preferred A shares of common stock to Defendant Zero.

280.     Defendant Zero was not eligible to receive free trading shares of CPMD as there existed no effective registration statement required by the 1933 Act and no applicable registration exemption was available to the limited liability company.

281.     Notwithstanding the unauthorized selling of CPMD stock by Herick to the respective entity as described herein, any legitimate issuance of CPMD common stock to the entities identified herein would, pursuant to Rule 144 of the 1933 Act, require such stock certificates to bear the following restrictive legend:

"The shares represented hereby have not been registered under the Securities Act of 1933, as amended, and may not be sold, transferred, assigned, pledged, hypothecated or otherwise disposed of unless and until registered under such act, or unless the company has received an opinion of counsel, or other evidence satisfactory to the company and its counsel, that such registration is not required."

282.     Herick was neither an officer nor a director of CPMD after April 23, 2019.

283.     Herick was not the Chief Financial Officer of CPMD after April 2015.

284.    On May 29, 2019, Herick was appointed to the position of agent, but Herick held no authority to issue or request the issuance of CPMD stock or to make representations on behalf of the CPMD Board of Directors.

285.    Herick knowingly and with the intent to deceive, drafted, signed, and delivered correspondence and the documents entitled letter of authorization to Mountain Share Transfer, LLC with the intent to cause them to rely upon this misrepresentation(s) and issue free trading CPMD common stock to the Defendant Zero.

286.    As a direct and proximate result of the Herick misrepresentation, Mountain Share Transfer, LLC, issued and delivered certificates to twenty thousand (20,000) shares of CPMD common stock not bearing the appropriate restrictive legend and not included within a registration statement filed with the SEC or otherwise subject to exception under SEC rules and regulations promulgated under authority of the 1933 Act so as to be freely transferable.

287.    As a result, Plaintiff stands subject to liability for the introduction of freely transferable shares of its common stock into the open market in violation of SEC regulations and for the dilution in value of properly registered or excepted shares then outstanding in the market.

288.    Despite a demand on May 1, 2020, upon the Defendants Herick and Zero, none of the twenty thousand (20,000) shares of CPMD common stock issued by Mountain Share Transfer, LLC, without restrictive legend to Zero, respectively, has been returned for cancellation; rather, Zero, under the direction and control of Herick, continues to sell the wrongfully obtained CPMD shares on the open market in violation of SEC Rule 144. A letter of demand is annexed as Exhibit P.

**Monetary compensation not sufficient in absence of non-return of Plaintiff's Series A Preferred Shares**

289.    The Convertible Note Financing conducted by Defendant Herick involved the sale of Series A Preferred Shares of Plaintiff CPMD to third parties.

290.    Defendant Herick sold his own Series A Preferred shares of Plaintiff CPMD instead of a direct issuance from CPMD.

291.    Defendant Herick sold Series A Preferred Shares of Plaintiff CPMD which he had not paid for.

292.    These Series A Preferred Shares of Plaintiff CPMD come with voting rights.

293.     Defendant Herick sold the Series A Preferred Shares of Plaintiff CPMD to third parties not known to CPMD.

294.     Defendant Herick sold the Series A Preferred Shares of Plaintiff CPMD to his affiliate, Defendant Zero.

295.     On May 1, 2020, Plaintiff CPMD wrote to Defendants Herick and Zero requesting the return of Series A Preferred Shares of Plaintiff CPMD not paid for by Defendant Herrick. *See* Exhibit P.

296.     On May 1, 2020, Plaintiff also requested the Share Certificate for Series A Preferred Shares of Plaintiff CPMD sold to Defendant Zero. *See* Exhibit P.

297.     Since the filing of this lawsuit, no payment has been made by Defendant Herrick for the Series A Preferred Shares of Plaintiff CPMD sold to third parties.

298.     Since the filing of this lawsuit, Defendants Herrick and Zero have failed to return the Share Certificate for the sale of Series A Preferred Shares of Plaintiff CPMD sold to Defendant Herrick's affiliate, Defendant Zero.

**Conspiracy between Defendants Herick, Huttrer, and Whitemoon**

299.     Defendant Huttrer manages and owns the entity Whitemoon.

300.     Defendant Huttrer is the spouse of Defendant Herick.

301.     Whitemoon is an affiliate of Defendant Herick.

302.     Defendant Herick has direct ownership of fifty thousand (50,000) shares of Plaintiff CPMD and indirect ownership of five hundred thousand (500,000) shares of Plaintiff CPMD common stock held in the name of Whitemoon. A certification of the ownership shares of Whitemoon recorded by Over the Counter ("OTC") markets which evidences this is annexed as Exhibit Q.

303.     Upon information and belief, Defendant Herick has a beneficial ownership of five hundred thousand (500,000) shares of common stock of Plaintiff CPMD through which Defendant Huttrer holds the shares via Defendant Whitemoon. *See* Exhibit Q.

304.     Upon information and belief, Whitemoon sold two hundred two thousand (202,000) shares of Plaintiff CPMD's common stock.

305.     Upon information and belief, Defendant Herick instead reported that he still owned these shares.

306.    Defendant Herick's representation was false.

307.    Defendant Herick did not report his beneficial interest in Defendant Whitemoon with respect to this trade in a subsequent Form 4 filing with the SEC. *See* <u>Exhibit M</u>.

308.    Upon information and belief, these shares were sold by Defendant Whitemoon in January 2019.

309.    Defendant Herick did not disclose this transaction until June 20, 2019.

310.    Upon information and belief, at this time Defendant Huttrer changed her position within Defendant Whitemoon from Chief Executive Officer to Consultant.

311.    Upon information and belief, Defendants Herick and Huttrer conspired with one another to defraud Plaintiff CPMD by deliberately not disclosing Defendant Herick's beneficial interest in Whitemoon as herein set out.

312.    On information and belief, the conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud Plaintiff CPMD.

313.    On information and belief, the conspiracy was formed with full knowledge and intent on the part of each Defendant to commit an unlawful trade.

314.    On information and belief, Defendants Herick, Huttrer, and Whitemoon did so in order to make an unlawful gain from the sale of Plaintiff CPMD's common stock.

315.    Defendants Herick, Huttrer, and Whitemoon in so doing caused Plaintiff CPMD to suffer loss and damages.

**Breach of fiduciary duty by Herick**

316.    Defendant Herick was appointed as the sole officer and director of Plaintiff CPMD in or about April 2016.

317.    Defendant Herick as an officer and director of Plaintiff CPMD owed a fiduciary duty to act in the best interests of Plaintiff CPMD.

318.    Defendant Herick as an officer and director of Plaintiff CPMD owed a duty of care to Plaintiff CPMD.

319.    Defendant Herick as an officer and director of Plaintiff CPMD owed a fiduciary duty to act in the best interests of Plaintiff CPMD's shareholders.

320.     Defendant Herick by putting Plaintiff CPMD's shares in the names of other persons and entities did so solely with the intent of obfuscating the short-swing profit violations and in so doing breached his fiduciary duty of good faith as an officer, director, and agent of Plaintiff CPMD.

321.     Defendants Herick and Arrowhead pledged Plaintiff CPMD's shares to Arrowhead Anesthesia as collateral for a loan and did so solely with the intention of making a financial gain that breached Defendant Herick's fiduciary duty of good faith as an officer, director, and agent of Plaintiff CPMD.

322.     Defendant Herick in making a private sale of Plaintiff CPMD's shares to third-party investors did so solely with the intention of making a financial gain that breached his fiduciary duty of loyalty as an officer, director, and agent of Plaintiff CPMD. *See* Exhibit M.

323.     Defendant Herick in making a private sale of Plaintiff CPMD's shares to third-party investors  did so solely with the intention of making a financial gain by committing an act of self-dealing at the expense of Plaintiff CPMD. *See* Exhibit M.

324.     Defendant Herick in not providing the capital of one hundred fifty thousand dollars ($150,000) as per the Notes from Arrowhead Anesthesia to Plaintiff CPMD, did so solely with the intention of making a financial gain at the expense of Plaintiff CPMD which was a breach of his fiduciary duty of good faith as an officer, director, and agent of Plaintiff CPMD.

325.     Defendant Herick in not providing the capital of one hundred fifty thousand dollars ($150,000) as per the Notes from Arrowhead Anesthesia to Plaintiff CPMD, did so solely with the intention of making a financial gain at the expense of Plaintiff CPMD which was a breach of his fiduciary duty of loyalty as an officer, director, and agent of Plaintiff CPMD.

326.     Defendant Herick in not providing the capital of one hundred fifty thousand dollars ($150,000) as per the Notes from Arrowhead Anesthesia to Plaintiff CPMD, did so solely with the intention of making a financial gain at the expense of Plaintiff CPMD which was an act of self-dealing at the expense of Plaintiff CPMD.

327.     Defendant Herick as an agent of CPMD undertook to communicate and meet perspective investor third parties in order to raise capital on behalf and for the benefit of CPMD.

328.     By virtue of his role as a corporate officer of CPMD he owes CPMD fiduciary duties.

329.     Defendant Herick owed a fiduciary duty to CPMD to act in the best interest of CPMD.

330.    Defendant Herick owed a fiduciary duty to CPMD to act in good faith for the benefit of CPMD.

331.    Defendant Herick owed a fiduciary duty to CPMD not to make a secret profit or gain at the expense of CPMD.

332.    Defendant Herick as part of his fiduciary duties to CPMD undertook to raise capital on behalf and for the benefit of CPMD.

333.    Defendant Herick undertook to communicate and meet perspective investor third parties in order to raise capital on behalf and for the benefit of CPMD.

334.    On July 10, 2019, July 15, 2019, July 24, 2019, and November 12, 2019, Defendant Herick executed a series of Share Purchase Agreements with third-party investors to sell to them nine hundred forty thousand (940,000) shares of CPMD's common stock for consideration in the sum of two hundred fifty-five thousand dollars ($255,000). *See* <u>Exhibits K-L</u>.

335.    Pursuant to clause one of each of the Share Purchase Agreements, entitled 'Purchase and Sale' Defendant Herick as the seller represented to the purchaser that he was selling shares of common stock of CPMD, the issuer. *See* <u>Exhibit K</u>, Clause 1, Purchase and Sale.

336.    Defendant Herick in fact sold his personal shares to the third-party investors in each of the Share Purchase Agreements and signed the Share Purchase Agreements in his personal capacity and not as an agent of CPMD.  *See* <u>Exhibit K</u>, signature pages.

337.    Defendant Herick's intent to make a secret profit from the Share Purchase Agreements at the expense of CPMD is evidenced in his wiring instructions to the third-party investors.

338.    Specifically, Defendant Herick insisted in the wiring instructions to the third-party investors that their payments for CPMD's common stock be made directly to Defendant Arrowhead and not CPMD. *See* <u>Exhibit M</u>.

339.    As a result of Defendant Herick's acts, Plaintiff CPMD has suffered loss and damages.

340.    As a result of Defendant Herick's breach of fiduciary duty as an agent of CPMD, Plaintiff CPMD has suffered loss and damages.

## FIRST CAUSE OF ACTION
### (COMMON LAW FRAUD against Defendant Herick)

341.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

342.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

343.    Defendant Herick represented to Plaintiff CPMD that the Capital from the promissory notes with Arrowhead Anesthesia was for the benefit of the Plaintiff, CPMD.

344.    On September 14, 2018, Defendant Herick represented this as fact to Plaintiff CPMD by executing the promissory notes with Arrowhead Anesthesia. *See* Exhibit G.

345.    This representation was false.

346.    This representation was made to Plaintiff so that Plaintiff would rely on it.

347.    Plaintiff CPMD relied on Defendant Herick's representation in the promissory notes with Arrowhead Anesthesia. *See* Exhibit G.

348.    Defendant Herick and Defendant Arrowhead instead stole the Capital from the promissory notes owed to Plaintiff, CPMD.

349.    On or about September 2018, Defendant Herick represented as fact to Plaintiff CPMD that he was traveling to Mexico City, Mexico and Phoenix, Arizona in order to raise money for Plaintiff.

350.    This representation was false.

351.    Plaintiff CPMD relied on Defendant Herick's representation by discharging expense reports submitted by Defendant Herick for these trips.

352.    On  April 20, 2018, Defendant Herick represented as fact to CPMD, Plaintiff that he would lock-up his shareholding in Plaintiff CPMD during the Series A Financing.

353.    This representation was false.

354.    This representation was made to Plaintiff, CPMD so that it would rely on it.

355.    Defendant Herick subsequently sold his shareholding in Plaintiff CPMD instead of the Convertible Note.

356.    Defendant Herick committed these acts of fraud against Plaintiff CPMD in order to deliberately cause damage and loss to CPMD.

357.   As a result of Defendant Herick's act of fraud, Plaintiff CPMD has suffered loss and damage.

358.   By reason of the foregoing, Defendant Herick is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

## SECOND CAUSE OF ACTION
## (BREACH OF FIDUCIARY DUTY against Defendant Herick)

359.   Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

360.   Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

361.   Defendant Herick,  was an officer, director and agent of Plaintiff CPMD.

362.   By virtue of his position as an officer and director, this created a fiduciary relationship between Defendant Herick, and Plaintiff CPMD.

363.   Defendant Herick owed a duty of care to Plaintiff CPMD.

364.   Defendant Herick owed a duty of good faith to Plaintiff CPMD to act in the best interests of Plaintiff CPMD.

365.   Defendants Herick owed a duty of loyalty to Plaintiff CPMD to not make a secret profit causing loss or damage to Plaintiff.

366.   Defendant Herick diverted one hundred fifty thousand dollars ($150,000) into the entity Arrowhead instead of to Plaintiff CPMD with the Convertible Note.

367.   Defendant Arrowhead accepted one hundred fifty thousand dollars ($150,000) which Plaintiff CPMD had the lawful right to this capital with the Convertible Note

368.   Plaintiff CPMD's officers Samuelson and Nicosia paid for twenty thousand (20,000) shares of Defendant Zero.

369.   Defendants Herick and Zero got the benefit of twenty thousand (20,000) shares but did not provide services in exchange for the shares.

370.   By reason of the aforementioned facts, Defendant Herick, breached these fiduciary

duties to Plaintiff CPMD.

371.    By reason of Defendant Herick's breach of his fiduciary duties, Plaintiff CPMD suffered loss and damages.

372.    By reason of the foregoing, Defendant Herick is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

**THIRD CAUSE OF ACTION**
**(CONVERSION against Defendant Herick)**

373.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

374.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

375.    Defendant Herick converted ownership of Plaintiff CPMD's corporate assets to his own without Plaintiff's lawful authority.

376.    Defendant Herick's conversion of Plaintiff CPMD's corporate assets was without Plaintiff's consent.

377.    Defendant Herick's conversion of Plaintiff CPMD's corporate assets deprived Plaintiff CPMD of its use and enjoyment of these corporate assets.

378.    By reason of the aforementioned facts, Defendant Herick committed theft of Plaintiff CPMD's corporate assets.

379.    By reason of Defendants Herick's acts and/or omissions, Plaintiff CPMD suffered loss and damages.

380.    By reason of the foregoing, Defendants Herick is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATIONS OF FEDERAL SECURITIES LAW- §10b5 and Rule 10b-5 against Defendants Herick, Zero, Whitemoon and Huttrer)**

381.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and

incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

382.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

383.    Defendant Herick acted as a Chief Financial Officer and Director of Plaintiff CPMD, a publicly-traded company.

384.    Defendant Herick was an insider of Plaintiff CPMD in accordance with the Securities Exchange Act.

385.    As an insider of Plaintiff, Defendant Herick had a legal obligation to ensure that all SEC filings were accurate.

386.    As an insider of Plaintiff, Defendant Herick had a legal obligation to ensure that all SEC filings were correct.

387.    Defendant Herick had a legal obligation not to misrepresent their value when selling or purchasing securities of Plaintiff.

388.    Defendant Herick had a legal obligation not to omit any material public information of Plaintiff CPMD when selling or purchasing securities of Plaintiff to third parties

389.    Defendant Herick had a legal obligation not to use insider information of Plaintiff CPMD when selling or purchasing securities of Plaintiff to any third parties.

390.    Defendant Herick had a legal obligation not to use insider information of Plaintiff CPMD when making Securities Exchange Act filings under penalty of perjury.

391.    Defendant Herick had a legal obligation not to use insider information of Plaintiff CPMD when selling or purchasing securities in order to receive a personal benefit.

392.    By reason of the aforementioned facts, Defendant Herick used insider information of Plaintiff CPMD when selling his stock in CPMD to third parties, including Defendants Zero, Huttrer and Whitemoon.

393.    Defendants Zero, Huttrer and Whitemoon acquired a direct benefit, namely, financial gain and caused loss to Plaintiff CPMD directly from the use of Defendant Herick's insider information of Plaintiff CPMD.

394.    By reason of the aforementioned facts, Defendant Herick used insider information of Plaintiff CPMD when selling his stock with intent to defraud Plaintiff.

395.     By reason of Defendant Herick, Defendants Zero, Whitemoon and Huttrer's acts and/or omissions, Plaintiff CPMD suffered loss and damages.

396.     By reason of the foregoing, Defendants Herick, Zero, Whitemoon and Huttrer are liable to Plaintiff CPMD in the amount of damages to be determined at trial.

## FIFTH CAUSE OF ACTION
## (VIOLATIONS OF FEDERAL SECURITIES LAW- §16 against Defendants Herick, Huttrer, and Whitemoon)

397.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

398.     Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

399.     Defendant Herick acted as a Chief Financial Officer and Director of Plaintiff CPMD, a publicly-traded company.

400.     At all material times Defendant Herick had a shareholding in excess of ten percent (10%) of Plaintiff CPMD's stock.

401.     Defendant Herick had a direct or indirect pecuniary interest in all of the shares of common stock and warrants purchased or sold as described in Paragraphs 239-250 and elsewhere.

402.     Some or all of the sales (deemed or actual) by the Defendants of shares of CPMD's common stock as described above, occurred within six months of, and at prices higher than, the purchases (deemed or actual) by the Defendant Herick of shares of CPMD's common stock as described herein.

403.     Defendant Herick used his position as a Chief Financial Officer of Plaintiff to realize a profit from selling or purchasing Plaintiff, CPMD's securities.

404.     Defendant Herick used his position as a Director of Plaintiff to realize a profit from selling or purchasing  Plaintiff, CPMD's securities.

405.     Defendant Herick sold Plaintiff CPMD's stock in August 2018, and acquired it back in January 2019.

406.    Defendant Whitemoon sold Plaintiff CPMD's stock in January 2019

407.    These transactions occurred within a period of six (6) months.

408.    Defendant Herick's acts were in violation of the Securities Exchange Act, 1934.

409.    By reason of Defendant Herick's acts and/or omissions, Defendant Herick realized short-swing profits in the amount of two hundred thousand seven hundred dollars ($219,700).

410.    Defendant Herick has failed to return the realized short-swing profits in the amount of two hundred thousand seven hundred dollars ($219,700).

411.    By reason of Defendant Herick's acts and/or omissions, Plaintiff CPMD suffered loss and damages in the amount of two hundred thousand seven hundred dollars ($219,700).

412.    Pursuant to Section 16(b) of the Act, the short swing profits realized by the Defendants as described in Paragraphs 239-250 inured to and are the lawful property of CPMD and recoverable by the Plaintiff.

## SIXTH CAUSE OF ACTION
## (CIVIL CONSPIRACY against ALL Defendants)

413.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

414.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

415.    Defendants conspired with one another to defraud Plaintiff.

416.    Defendants Herick, Arrowhead, Zero, Huttrer and Whitemoon committed a fraud in order to cause loss, harm and to defraud Plaintiff.

417.    Defendants Herick, Arrowhead, Huttrer, Whitemoon, and Zero conducted unlawful transactions involving the purchase and sale of securities of CPMD.

418.    Defendants Herick, Arrowhead, Huttrer, Whitemoon, and Zero conducted these unlawful transactions so as to perpetrate a fraud to cause loss, harm and to defraud Plaintiff.

419.    Defendants Herick, Arrowhead, Huttrer, Whitemoon, and Zero in so doing collectively participated in unlawful monetary transactions.

420.     Defendants Herick, Arrowhead, Huttrer, Whitemoon, and Zero engaged and participated in unlawful monetary transactions so as to cause proximate damage to Plaintiff CPMD's business.

421.     Defendants Herick,  Arrowhead, Huttrer, Whitemoon, and Zero collectively participated in unlawful monetary transactions.

422.     Defendants Herick,  Arrowhead, Huttrer, Whitemoon, and Zero engaged and participated in unlawful monetary transactions so as to cause proximate damage to Plaintiff CPMD's business.

423.     The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff CPMD of its rights and interests in its stock.

424.     The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff CPMD of its rights and interests in its corporate assets.

425.     Each of Defendants' unlawful and overt acts were the proximate result of Plaintiff CPMD's injuries/damages in being deprived of promised financing to assist Plaintiff in bringing its SEC filings current.

426.     By reason of the foregoing, each of the Defendants are liable to Plaintiff CPMD in the amount of damages to be determined at trial.


**SEVENTH CAUSE OF ACTION**
**(vicarious liability against Defendant Herick)**


**A.  Defendant Herick Caused the Corporate Forms of Arrowhead and Zero to Be Used to Perpetrate an Actual Fraud on Plaintiff for Defendant Herick's Personal Gain.**

427.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

428.     Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

429.     Defendant Herick engaged in communications and fraudulent conduct with third parties with respect to Plaintiff CPMD that were dishonest of purpose and intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

430.    Defendant Herick engaged in communications and fraudulent conduct with third parties with respect to Plaintiff CPMD that were dishonest of purpose and intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

431.    Defendant Herick used the corporate forms of Arrowhead and Zero to perpetrate this fraud.

432.    Defendant Herick perpetrated an actual fraud on Plaintiff for his own benefit, specifically misleading Plaintiff CPMD to believe that payments from Arrowhead Anesthesia were for personal expenses incurred by Defendants Herick and Arrowhead.

433.    Defendant Herick perpetrated an actual fraud on Plaintiff for his own benefit, specifically in misleading Plaintiff CPMD to believe that it was receiving capital from Arrowhead Anesthesia during the Convertible Note.

434.    Defendant Herick used the corporate form of Arrowhead and Zero to perpetrate this fraud and, in fact, perpetrated it.

435.    Defendant Herick's commission of an actual fraud on Plaintiff was solely for Defendant Herick's own benefit.

436.    By reason of the foregoing, Defendant Herick is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

**B. The Corporate Form Was Organized and Operated as a Mere Tool or Business Conduit of Another.**

437.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

438.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

439.    Defendant Herick has or at relevant times had a financial interest, ownership, or control of Defendants Arrowhead and Zero.

440.    There is such a unity between Defendant Herick and Defendant Arrowhead, and between Defendant Herick and Defendant Zero that the separateness of the corporations has ceased.

441.    Holding only Defendant Arrowhead's corporate entity liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendant Arrowhead while allowing the corporation's alter egos, and each other, to go free. Thus, it is proper for  Plaintiff CPMD to pierce the corporate veil of Defendant Arrowhead for Defendant Herick to be sued individually.

442.    There is such a unity between Defendant Herick and Defendant Arrowhead, and between Defendant Herick and Defendant Zero that the separateness of the corporations has ceased.

443.    Holding only Defendant Zero's corporate entity liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendant Zero while allowing the corporations alter egos, and each other, to go free. Thus, it is proper for Plaintiff CPMD to pierce the corporate veil of Defendant Zero for Defendant Herick to be sued individually.

444.    By reason of the foregoing, Defendant Herick is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

### EIGHT CAUSE OF ACTION
### (vicarious liability against Defendant Huttrer)

**A.  Defendant Huttrer Caused the Corporate Form of Whitemoon To Be Used to Perpetrate an Actual Fraud on Plaintiff for Defendant Huttrer's Personal Gain.**

445.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

446.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

447.    Defendant Huttrer engaged in communications and fraudulent conduct with third parties with respect to Plaintiff CPMD that were dishonest of purpose and intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

448.    Defendant Huttrer engaged in communications and fraudulent conduct with Defendant Herick with respect to Plaintiff CPMD's shares that were dishonest of purpose and

intended to deceive third parties and cause Plaintiff consequential financial loss and harm.

449.     Defendant Huttrer perpetrated an actual fraud on Plaintiff for her own benefit, specifically using insider information of Plaintiff CPMD provided by Defendant Herick in order to receive a personal benefit and make an unlawful gain on the sale of Plaintiff CPMD's stock.

450.     Defendant Huttrer perpetrated an actual fraud on Plaintiff for her own benefit, specifically omitting to disclose Defendant Herick's beneficial ownership in Whitemoon prior to the sale of Plaintiff CPMD's stock.

451.     Defendant Huttrer used the corporate form of Whitemoon to perpetrate this fraud, and both, in fact, perpetrated it.

452.     Defendant Huttrer's commission of an actual fraud on Plaintiff was solely for Defendant Huttrer's own benefit.

453.     By reason of the foregoing, Defendant Huttrer is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

B.     **The Corporate Form Was Organized and Operated as a Mere Tool or Business Conduit of Another.**

454.     Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

455.     Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

456.     Defendant Huttrer has or at relevant times had a financial interest, ownership, or control of Defendant Whitemoon.

457.     There is such a unity between Defendant Huttrer and Defendant Whitemoon, and between Defendant Huttrer and Defendant Whitemoon that the separateness of the corporations has ceased.

458.     Holding only Defendant Whitemoon's corporate entity liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendant Whitemoon while allowing the corporation's alter egos, and each other, to go free. Thus, it is proper for  Plaintiff CPMD to pierce the corporate veil of Defendant Whitemoon for Defendant Huttrer to be sued

individually.

459.    By reason of the foregoing, Defendant Huttrer is liable to Plaintiff CPMD in the amount of damages to be determined at trial.

## NINTH CAUSE OF ACTION
## (REQUEST FOR PRELIMINARY INJUNCTION against ALL Defendants)

460.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

461.    Plaintiff CPMD incorporates all preceding paragraphs as if fully restated herein.

462.    For the following reasons and arguments, Plaintiff respectfully requests that this Court enter a Preliminary Injunction against each of the Defendants for the pendency of this lawsuit.

463.    The Court should enter the Preliminary Injunction with notice to each of the Defendants because Plaintiff will suffer immediate and irreparable injury, loss, or damage if a Preliminary Injunction is not granted.

464.    Plaintiff will suffer irreparable harm if each of the Defendants are not enjoined and restrained from doing the following during the pendency of this lawsuit:

   a.  *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' common stock or any securities in CPMD to any individual personally; and*
   b.  *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' convertible and or preferred stock or any securities in CPMD to any individual personally; and*
   c.  *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' common stock or securities in CPMD to any corporate entity; and*

d. *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' convertible stock or any securities in CPMD to any corporate entity; and*

e. *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' common stock or any securities in CPMD to any individual personally who is an affiliate of the Defendants; and*

f. *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring any of the Defendants' convertible stock or securities in CPMD to any corporate affiliate of the Defendants; and*

g. *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Plaintiff's common stock, including but not limited to all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

h. *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Plaintiff's convertible stock, including but not limited to all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

i. *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Plaintiff's securities of CPMD, including but not limited to all hard drives, back-ups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

j. *Distributing, disbursing, delivering or depositing by electronic wire transfer or otherwise or alienating, encumbering, hypothecating, assigning or transferring any revenue generated from the purchase and sale of common stock, convertible stock or securities of CPMD from any of the individuals or their affiliates implicated by this lawsuit to any third party.*

465.   There is a substantial likelihood that Plaintiff will prevail on the merits, and the requested injunctive relief requests preservation of the status quo and safeguarding of evidence.

466.   Specifically, Plaintiff CPMD has the documentary evidence and proof to substantiate and support each of the causes of action pleaded against all Defendants in these proceedings. *See* Exhibits A-Q.

467.   The harm faced by Plaintiff outweighs the harm that would be sustained by Defendants if a temporary restraining order and preliminary injunction was granted.  Plaintiff needs to have its investments protected.

468.   Specifically, Plaintiff needs to restrain Defendants from selling the Series A Preferred Shares of Plaintiff CPMD to third parties which will cause imminent consequential loss and harm to Plaintiff, CPMD.

469.   Monetary compensation will not be sufficient to remedy this consequential loss and harm to Plaintiff, CPMD as the Series A Preferred Shares of Plaintiff CPMD possess exclusive voting rights.

470.   Plaintiff, CPMD prior to filing this suit requested the return of the Series A Preferred Shares of Plaintiff CPMD from the Defendants, but to no avail. *See* Exhibit O.

471.   Plaintiff fears and there is evidence showing that Defendants have intentionally and fraudulently instructed agents to sell Plaintiff's interests without Plaintiff's knowledge or consent.

472.   Finally, issuance of a preliminary injunction would not adversely affect public interest and public policy. Public policy is enhanced by an injunction to protect an investor's investment against fraud, and to protect and safeguard evidence to be used in litigation. ln fact, the issuance of the requested injunctions would positively impact public interest and public policy with no adverse effect.

473.   Plaintiff asks the Court to immediately set for hearing at the earliest possible time its Motion for Preliminary Injunction and, after hearing the request, issue a preliminary injunction against Defendants for the pendency of this lawsuit.

## **JURY DEMAND**

474.   Plaintiff requests that the Court set this case for a jury trial.

**PRAYER**

475.    **WHEREFORE**, premises considered, Plaintiff respectfully requests that the Court set this case for trial and that the Court grant Plaintiff the following relief against Defendants, jointly and severally, as follows:

1.   A Temporary Injunction;

2.   Compensatory damages of no less than one million dollars ($1,000,700) to be proven at trial;

3.   Disorgement  of short-swing profits in violation of Section 16 of the Securities Act of 1934 in the amount of two hundred thousand seven hundred dollars ($210,700);

4.   Exemplary, treble and statutory damages to be proven at trial;

5.   Attorneys' fees and costs of suit;

6.   Pre-judgment interest at the maximum rate allowed by law; and

7.   Such other and further relief as the Court deems just and proper.

DATED: New York, New York
          September 24, 2020

                                      Respectfully submitted,

                                      /s/ Joshua D. Brinen
                                      Joshua D. Brinen
                                      Brinen & Associates, LLC
                                      90 Broad Street, Tenth Floor
                                      New York, New York 10004
                                      (212) 330-8151 (Telephone)
                                      (212) 227-0201 (Fax)
                                      jbrinen@brinenlaw.com
                                      Attorney for the Plaintiff


                                      /s/ Mark White
                                      Mark E. White
                                      Brinen & Associates, LLC
                                      90 Broad Street, Tenth Floor
                                      New York, New York 10004

(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
mwhite@brinenlaw.com
Attorney for the Plaintiff

**VERIFICATION**

**DOMINIC COLVIN**, being duly sworn, says:

I am Chief Executive Officer of Plaintiff CANNAPHARMARX, INC. I have read the foregoing First Amended Complaint, and I know the contents thereof. The same is true to the best of my knowledge, except as to those matters alleged upon information and belief, and as to those matters, I believe them to be true.

Dominic Colvin

Sworn to before me this 28 day of September, 2020.

NOTARY PUBLIC

BRENDON GUY ROTHWELL
A Notary Public in and for the
Province of British Columbia
101-554 Leon Avenue
Kelowna, BC V1Y 6J6

**PERMANENT COMMISSION**